UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ONYINYE DIAN EGBUEJE, Plaintiff, – against – EPIQ EDISCOVERY SOLUTIONS, INC., Defendant. | **ORDER** 24 Civ. 6702 (LDH) (VMS) |

**Vera M. Scanlon, United States Magistrate Judge:**

Before the Court is Defendant Epiq eDiscovery Solutions, Inc.'s ("Defendant") motion to compel arbitration and stay this action pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 et seq., or alternatively, to dismiss pro se Plaintiff Onyinye Dian Egbueje's ("Plaintiff") Amended Complaint pursuant to Federal Rules of Civil Procedure 12(b)(5) and 12(b)(6). See ECF No. 33. The District Judge referred Defendant's motion to compel arbitration to the undersigned and reserved determination as to the motion to dismiss. See 7/14/2026 Order. For the reasons stated below, the Court grants Defendant's motion to compel arbitration and stays this case pending the outcome of arbitration.

## I. BACKGROUND

### A. Allegations In Plaintiff's Amended Complaint

The Court accepts the facts alleged in Plaintiff's Amended Complaint as true for purposes of this motion to compel arbitration. See Barrows v. Brinker Restaurant Corp., 36 F.4th 45, 49 (2d Cir. 2022) (noting "motions to compel arbitration are governed by a standard similar to that applicable for a motion for summary judgment," which requires "draw[ing] all reasonable inferences in favor of the non-moving party") (internal quotations & citation

omitted). Plaintiff is a Black woman of Nigerian and African descent who was employed by Defendant as a Project Analyst beginning in May 2022. See ECF No. 28 ¶ 2. Plaintiff alleges that despite her strong performance, including being recognized as the highest-producing Project Analyst nationwide in July 2022, "Plaintiff was subjected to ongoing harassment, discriminatory remarks, sexual harassment, retaliation, and ultimately unlawful termination on February 2, 2023." Id. Plaintiff alleges that she regularly worked more than forty hours per week without receiving overtime pay. Id. ¶¶ 34-36.

Plaintiff alleges that beginning in May 2022, a fellow Project Analyst, Inge Anderson ("Ms. Anderson"), "repeatedly disparaged Plaintiff in one-on-one calls, on Microsoft Teams chat [and] channels, and in meetings." Id. ¶ 12. When Plaintiff informed Ms. Anderson that she was from Nigeria, "Anderson commented that Plaintiff's English was 'too good' for someone from her country." Id. ¶ 13. Ms. Anderson also said "that Plaintiff 'did primitive things outside of work,' that her 'performance was off,' and that she 'did not understand the issues being discussed.'" Id. ¶ 14. Plaintiff alleges that around June to August 2022, "Anderson falsely accused Plaintiff of deleting files, berating her over the phone without factual basis or authority." Id. ¶ 17. Ms. Anderson continued to make disparaging comments in group meetings through December 2022. Id. ¶ 19. Plaintiff reported Ms. Anderson's behavior to management, but Manager Chris Tuescher ("Mr. Tuescher") failed to intervene. Id. ¶¶ 20-21. Plaintiff asserts that Mr. Tuescher "effectively dismiss[ed] the matter as a mere 'cat fight' between women." Id. ¶ 33. During a conference call on January 6, 2023, Ms. Anderson told Plaintiff she was "inferior" and claimed she had permission from Mr. Tuescher to "speak however she wanted." Id. ¶ 28.

Between June and December 2022, Plaintiff alleges that co-worker Joshi Amol ("Mr. Amol") "made inappropriate remarks about Plaintiff's Teams profile photo, questioned whether

it was really her, and stated he 'would do anything' for her.'" Id. ¶ 32. Around September 2022, Defendant implemented an "error log," which disproportionately targeted diverse employees including Plaintiff. Id. ¶ 23. Plaintiff was placed on a Performance Improvement Plan ("PIP") despite her strong performance, causing her to experience anxiety and panic attacks. Id. ¶¶ 24-25.

Plaintiff alleges that in mid-2022, she informed Mr. Tuescher that she planned to use accrued vacation time to travel to her hometown. Id. ¶ 26. After being encouraged to finalize her plans by Mr. Tuescher, Plaintiff purchased tickets and notified him of her travel dates. Id. Days before her scheduled departure, Mr. Tuescher told Plaintiff that upper management had denied her request to work abroad. Id. ¶ 27. Plaintiff used her approved vacation and continued working remotely while awaiting affordable return travel. Id. Between January 6 and January 27, 2023, Plaintiff alleges Mr. Tuescher threatened to contact Human Resources because Plaintiff was working outside the country. Id. ¶ 30. On February 2, 2023, Defendant terminated Plaintiff's employment, citing insubordination. Id. ¶ 31.

**B. The Agreement And Arbitration Provision**

As a condition of Plaintiff's employment with Defendant, Plaintiff entered an "Employment, Confidential Information, Invention Assignment and Arbitration Agreement" (the "Agreement"). See ECF No. 33 at 9. The Agreement's arbitration provision (the "Arbitration Provision") states that Plaintiff agrees that "any dispute or controversy" that Plaintiff may have with Defendant arising out of her employment, including "any and all claims for violation of any federal, state or municipal statute, including, but not limited to, Title VII of the Civil Rights Act of 1964 . . . [and] the Fair Labor Standards Act" are subject to arbitration. See ECF No. 33-1 at 18-19.

In an accompanying Declaration filed with Defendant's motion, Defendant's Senior Director of Human Resources explains that on May 12, 2022, Plaintiff accessed the Agreement by logging into Defendant's career website using a unique username and password that Plaintiff created when applying for the job. See Declaration of Rehane Allen ("Allen Decl."), ECF No. 33-1 ¶¶ 7-9. Once logged in, Plaintiff was presented with several pending tasks to complete, including reviewing an Offer Letter and the Agreement. Id. ¶ 7. To complete each task, Plaintiff clicked on the button "Review," which gave her the option to open or download the document, and checked the box "I Agree." Id. ¶ 8. The following statement appeared before reviewing the Agreement: "I ACKNOWLEDGE THAT I HAVE CAREFULLY READ THE ATTACHED EMPLOYMENT AGREEMENT, I AM SATISFIED THAT I UNDERSTAND IT COMPLETELY, AND I AGREE TO BE BOUND BY ITS TERMS AND CONDITIONS. I EXPRESSLY ACKNOWLEDGE THAT THE FOREGOING AGREEMENT CONTAINS A BINDING ARBITRATION PROVISION." See ECF No. 33-1 at 12. After checking "I Agree" as to both the Agreement and Offer Letter, Plaintiff clicked on the "OK" button at the bottom of the page and submitted the task for completion. See Allen Decl. ¶ 8. According to Defendant's records, Plaintiff electronically agreed to and accepted the Offer Letter and Agreement on May 12, 2022, at 10:06 a.m. Id. ¶ 9; ECF No. 33-1 at 14.

Plaintiff does not disagree with Defendant's statement of facts as to the Agreement, but disagrees as to the correct conclusion to be drawn from the application of the law to the Agreement. See generally Pl.'s Opp'n, ECF No. 36.

### C. Procedural History

Plaintiff timely commenced this action. See ECF No. 1. After Plaintiff resolved service issues, Defendant's counsel appeared in this matter and initiated proceedings to compel

arbitration or, alternatively, to dismiss the Complaint. See ECF Nos. 14-18. About one month later, the undersigned held an initial conference. See 9/4/2025 Order. About two weeks later, Plaintiff filed an Amended Complaint. See ECF No. 28. The Amended Complaint contains five claims for relief: (1) discrimination and hostile work environment under Title VII, the New York State Human Rights Law ("NYSHRL") and the New York City Human Rights Law ("NYCHRL"); (2) retaliation under Title VII, the NYSHRL and the NYCHRL; (3) sex discrimination and sexual harassment under Title VII, the NYSHRL and the NYCHRL; (4) wrongful terminal/unlawful discharge under the NYSHRL and the NYCHRL; and (5) failure to pay overtime under the Fair Labor Standards Act ("FLSA"). Id. at 5-7. Relying on the Agreement's Arbitration Provision, Defendant moved to compel arbitration and stay the action. See ECF No. 33. Plaintiff filed an opposition, see ECF No. 36, and Defendant filed a reply, see ECF No. 38.

## II. LEGAL STANDARDS

When both a motion to compel arbitration and a motion to dismiss are before the Court, the Court "should generally rule on [the] motion to compel arbitration before proceeding to [the] merits-based motion to dismiss." Harris v. TD Ameritrade Inc., 338 F. Supp. 3d 170, 181 (S.D.N.Y. 2018), aff'd, 837 F. App'x 841 (2d Cir. 2021). The FAA "requires a federal court to enforce arbitration agreements and to stay litigation that contravenes them." Burns v. New York Life Ins. Co., 202 F.3d 616, 620 (2d Cir. 2000) (citing 9 U.S.C. §§ 2 & 3). The FAA codifies a "liberal federal policy favoring arbitration agreements." Meyer v. Uber Technologies, Inc., 868 F.3d 66, 73 (2d Cir. 2017) (internal citations & quotation marks omitted). "[A]rbitration clauses are generally enforceable under federal law, because the FAA puts arbitration clauses 'on an equal footing with other contracts.'" Certain Underwriters at Lloyds, London v. 3131 Veterans

Blvd. LLC, 136 F.4th 404, 409 (2d Cir. 2025) (quoting Coinbase, Inc. v. Suski, 602 U.S. 143, 148, 144 S. Ct. 1186 (2024)).

When reviewing a motion to compel arbitration, "a court must first decide whether the parties agreed to arbitrate." Zachman v. Hudson Valley Fed. Credit Union, 49 F.4th 95, 101 (2d Cir. 2022). The moving party "bears an initial burden of demonstrating that an agreement to arbitrate was made." Barrows, 36 F.4th at 50 (quoting Hines v. Overstock.com, Inc., 380 F. App'x 22, 24 (2d Cir. 2010) (summary order)). If the moving party is successful, the burden shifts to the non-moving party to provide evidence that an agreement was not made. See id. (citations omitted). If the court finds that an arbitration agreement exists, it must then review "(1) the scope of the agreement to arbitrate; (2) whether Congress intended any federal statutory claims asserted to be non-arbitrable; and (3) if some, but not all, of the claims in the case are arbitrable, whether to stay the balance of the proceedings pending arbitration." Zachman, 49 F.4th at 101.

If an arbitration clause is present in a contract, courts look to "generally accepted principles of contract law" to determine whether the arbitration clause binds the parties. Gold v. Deutsche Aktiengesellschaft, 365 F.3d 144, 149 (2d Cir. 2004) (collecting cases) (noting that a signatory to a written contract "is conclusively presumed to know its contents and to assent to them" (citations & quotation omitted)). If the contract bears the parties' electronic signatures, then a court may find that a valid agreement to arbitrate exists. See Barrows, 36 F.4th at 50; Fadlelseed v. ABM Aviation JFK, No. 23 Civ. 4559 (LDH) (LKE), 2024 WL 4344790, at *6, *8 (E.D.N.Y. Sep't 30, 2024). Questions over the whether a dispute falls within scope of an arbitration agreement "should be resolved in favor of arbitration." DDK Hotels, LLC v. Williams-Sonoma, Inc., 6 F.4th 308, 317 (2d Cir. 2021) (quoting First Options of Chi., Inc. v.

Kaplan, 514 U.S. 938, 945 (1995)). Courts take provisions requiring arbitration of "any dispute" or "all disputes" literally. See id. at 318-19; American E Group LLC v. Livewire Ergogenics Inc., 432 F. Supp. 3d 390, 398-99 (S.D.N.Y. 2020).

If a court determines that arbitration is compulsory as to at least some issues in an action, its next steps depend on the positions of the parties. If a party requests a stay pending arbitration, then a stay of the case is required. See Smith v. Spizzirri, 601 U.S. 472, 478 (2024). If neither party requests a stay, the court maintains discretion to manage the docket as it sees fit. See Katz v. Kellco P'ship, 794 F.3d 341, 346 (2d Cir. 2015) (observing that absent a "statutory mandate" stating otherwise, "district courts . . . enjoy an inherent authority to manage their dockets"). For example, if neither party has requested a stay, but all claims in an action are subject to arbitration, a court may dismiss the action. See Benzemann v. Citibank N.A., 622 F. App'x 16, 18 (2d Cir. 2015) (summary order); Acevedo v. Harvard Maint. Co., No. 20 Civ. 721 (AJN), 2021 WL 1224898, at *9 (S.D.N.Y. Mar. 31, 2021). Nonetheless, courts in the Second Circuit "regularly stay, rather than dismiss, complaints subject to an arbitration agreement," even when one party requests dismissal. Puig v. City of New York, 733 F. Supp. 3d 218, 224 (S.D.N.Y. 2024) (quoting Chung v. 335 Madison Avenue LLC, No. 21 Civ. 3861 (LJL), 2021 WL 4710483, at *4 (S.D.N.Y. Oct. 7, 2021)). A stay of litigation proceedings, rather than dismissal, "allows the parties to proceed directly to arbitration without the uncertainties and expenses of additional litigation that may accompany an appealable dismissal." Chung, 2021 WL 4710483, at *4.

It is similarly up to the court's discretion to stay some, but not all, of the proceedings in a case if some, but not all, issues are arbitrable. See Katsoris v. WME IMG, LLC, 237 F. Supp. 3d 92, 110 (S.D.N.Y. 2017). In exercising discretion, courts look to factors such as the "desirability

of avoiding piecemeal litigation and the degree to which the cases necessitate duplication of discovery or issue resolution." Fasano v. Li, No. 16 Civ. 8759 (KPF), 2023 WL 6292579, at *14 (S.D.N.Y. Sep't 27, 2023) (citations & quotations omitted). "A discretionary stay is particularly appropriate when there is significant factual overlap between the remaining claims and the arbitrated claims." Katsoris, 237 F. Supp. 3d at 110-11 (quoting Winter Inv.'s, LLC v. Panzer, No. 14 Civ. 6852 (KPF), 2015 WL 5052563, at *11 (S.D.N.Y. Aug. 27, 2015)). In such cases, proceeding with litigation against the remaining defendants "would invariably implicate issues common to the claims against the [arbitrating] defendants and affect those defendants' interests." Yost v. Everyrealm, Inc., No. 22 Civ. 6549 (PAE), 2023 WL 2859160, at *12 (S.D.N.Y. Apr. 10, 2023).

The Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2022 (the "EFAA") amended the FAA and provides that "at the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which . . . relates to the sexual assault dispute or the sexual harassment dispute." See 9 U.S.C. § 402(a). It applies only to claims that accrued on or after the date of its enactment, March 3, 2022. See Pub. L. No. 117-90, § 3, 136 Stat. 26, 28 (2022); see, e.g., Johnson v. Everyrealm, Inc., 657 F. Supp. 3d 535, 550 (S.D.N.Y. 2023) (collecting cases). The statute defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal or State law." 9 U.S.C. § 401(4). The EFAA provides that its application "shall be determined by a court, rather than an arbitrator," under federal law, "irrespective of whether the party resisting arbitration challenges the arbitration agreement specifically or in conjunction with other terms of the contract containing [the]

agreement," or "whether the agreement purports to delegate such determinations to an arbitrator." Id. § 402(b). By its plain language, the EFAA does not apply to sex or gender-based discrimination claims other than sexual assault or harassment claims. See 9 U.S.C. § 402(a); Matima v. ByteDance, Inc., No. 25 Civ. 10213 (PAE), 2026 WL 2676497, at *12 (S.D.N.Y. Sep't 11, 2026) (finding that "the EFAA, by its terms, does not reach claims of gender discrimination, but only claims of sexual harassment, a particular form of gender discrimination involving unwanted, gender-based verbal or physical contact."); Toomey v. One Equity Partners, No. 24 Civ. 4088 (MMG), 2026 WL 458244, at *4 (S.D.N.Y. Feb. 18, 2026) ("[T]he EFAA exempts claims relating to sexual harassment and sexual assault, only.").

Second Circuit courts are divided over whether plaintiffs must plausibly allege claims of sexual harassment or merely allege non-frivolous claims of sexual harassment to come under the EFAA. Compare Owens v. PriceWaterHouseCoopers LLC, 786 F. Supp. 3d 831, 842 (S.D.N.Y. 2025) (collecting cases employing a plausibility standard), with Diaz-Roa v. Hermes L., P.C., 757 F. Supp. 3d 498, 533 (S.D.N.Y. 2024) (applying a non-frivolous allegation standard). Lower courts interpreting the EFAA have generally held that "the text of § 402(a) makes clear that its invalidation of an arbitration agreement extends to the entirety of the case relating to the sexual harassment dispute, not merely the discrete claims in that case that themselves either allege such harassment or relate to a sexual harassment dispute." Johnson, 657 F. Supp. 3d at 559.[1]

[1] At least two federal courts of appeals have followed Johnson and held that where a plaintiff has alleged a "sexual assault dispute" or a "sexual harassment dispute," the EFAA renders the arbitration agreement unenforceable as to the entire case. See Bruce v. Adams & Reese, LLP, 168 F.4th 367, 385-86 (6th Cir. 2026); Ding v. Structure Therapeutics, Inc., NASDAQ, No. 25-1532, 2026 WL 2420555, at *7 (9th Cir. Aug. 19, 2026).

## III. DISCUSSION

Defendant moves to compel arbitration under the Agreement, arguing that Plaintiff is bound by the Arbitration Provision, that all of Plaintiff's claims are arbitrable, and that the EFAA does not apply to Plaintiff's sex discrimination and sexual harassment claims. See Def.'s Mem., ECF No. 33 at 15-20. In opposition, Plaintiff contends that the Agreement is procedurally and substantively unconscionable, that it does not encompass all of Plaintiff's claims, and that it is revocable at Plaintiff's option given the nature of the dispute. See Pl.'s Opp'n, ECF No. 36-1 at 9-23. In reply, Defendant maintains that the Agreement requires an arbitrator to decide arbitrability, that the EFAA does not apply because Plaintiff has not plausibly alleged a "sexual harassment" dispute, and that the Arbitration Provision covers all claims. See Def.'s Reply, ECF No. 38 at 5-9.

### A. The Amended Complaint Fails To Plead A Viable Sexual Harassment Claim

The Court first considers whether Plaintiff adequately pleads a sexual harassment claim under federal or New York law.[2] If she did, it could trigger the EFAA and bar arbitration of some or all of her claims. As noted above, Second Circuit courts are divided over whether the EFAA requires a plaintiff's allegations of sexual harassment to be "plausible" or merely "non-frivolous." See Hankins v. Burlington Stores, Inc., No. 25 Civ. 2513 (NRM) (PK), 2026 WL 1480393, at *2 (E.D.N.Y. May 27, 2026) (discussing split within this Circuit).[3] Given the

---

[2] The Court performs this analysis for the purpose of the motion to compel arbitration only, not for the motion to dismiss.

[3] Most courts have concluded that the "the term 'alleged' as used in [the EFAA] is best read to implicitly incorporate the [Rule 12(b)(6)] plausibility standard." Yost, 657 F. Supp. 3d at 585; accord Kelly v. Rosenberg & Estis., P.C., 804 F. Supp. 3d 461, 465 (S.D.N.Y. 2025); Singh v. Meetup LLC, 750 F. Supp. 3d 250, 253 (S.D.N.Y. 2024), recons. denied, No. 23 Civ. 9502 (JPO), 2024 WL 4635482 (S.D.N.Y. Oct. 31, 2024). Other courts have declined to read a

evolving state of the case law around the interpretation of the EFAA, the Court will not weigh in on the correct pleading standard here. For the reasons discussed below, the Court finds that Plaintiff fails to meet either standard.

The EFAA defines "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." 9 U.S.C. § 401(4). Many courts in this Circuit have read "State law" to include municipal law, including the NYCHRL. See Owens, 786 F. Supp. at 843 n.2 (holding that "the term 'State law' in 9 U.S.C. § 401(4) encompasses the law of states' subdivisions and therefore includes the NYCHRL") (collecting cases). Plaintiff asserts sexual harassment claims under Title VII, the NYSHRL and the NYCHRL. See generally ECF No. 28 ¶¶ 37-52. Defendant has not argued against the proposition that the NYCHRL constitutes "State law" under the EFAA and addresses Plaintiff's claims under Title VII, the NYSHRL and the NYCHRL.[4] See Def.'s Mem., ECF No. 33 at 16-19; See Def.'s Reply, ECF No. 38 at 7-9. Accordingly, the Court likewise analyzes Plaintiff's claims under all three statutes but does not decide whether "State law" encompasses municipal law.

---

plausibility requirement into the EFAA. See, e.g., Diaz-Roa, 757 F. Supp. 3d at 533; Noorbaloochi v. C3.aI, Inc., No. 25 Civ. 7527 (AT), 2026 WL 2593025, at *4 (S.D.N.Y. Sep't 1, 2026).

[4] This follows the approach employed by many courts in this Circuit in cases involving motions to compel arbitration in the EFAA context. See, e.g., Noorbaloochi, 2026 WL 2593025, at *4; Owens, 786 F. Supp. 3d at 847 (assessing both the NYSHRL and the NYCHRL); Lane v. Salesforce, Inc., No. 25 Civ. 9707 (DEH) (HJR), 2026 WL 2364630, at *4 (S.D.N.Y. Aug. 14, 2026) (focusing analysis on the NYCHRL); Faruque v. JP Morgan Chase & Co., No. 24 Civ. 5734 (OEM) (LKE), 2026 WL 1964826, at *5 (E.D.N.Y. Feb. 17, 2026), report & recommendation adopted, No. 24 Civ. 5734 (OEM) (LKE), 2026 WL 1964820 (E.D.N.Y. Mar. 4, 2026) (same).

A workplace sexual harassment claim under Title VII can proceed under two theories: quid pro quo harassment and a hostile work environment. See Owens, 786 F. Supp. 3d at 847 (quoting Distasio v. Perkin Elmer Corp., 157 F.3d 55, 62 (2d Cir. 1998)). Plaintiff does not make any allegations of quid pro quo harassment. See generally ECF No. 28. A hostile work environment claim under Title VII requires allegations that the workplace was "permeated with discriminatory intimidation, ridicule and insult, that [was] sufficiently severe or pervasive to alter the conditions of the victim's employment." Waiguchu v. Morgan Stanley & Co. LLC, No. 25 Civ. 7443 (GHW), 2026 WL 892069, at *8 (S.D.N.Y. Apr. 1, 2026) (quotations & citations omitted). To prevail on a Title VII sexual harassment claim, the plaintiff must demonstrate "a causal connection between the gender of the individual or class and the resultant preference or disparity." DeCintio v. Westchester Cnty. Med. Ctr., 807 F.2d 304, 307 (2d Cir. 1986).

The NYSHRL and NYCHRL provide more liberal interpretations of "sexual harassment" than does Title VII. See Qorrolli v. Metro. Dental Assocs., 124 F.4th 115, 122-23 (2d Cir. 2024) ("The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align with the NYCHRL's more liberal pleading standard.") (applying same standard for claims under the NYSHRL and NYCHRL at summary judgment). The NYSHRL makes it unlawful for an employer to discriminate against an individual because of an individual's "gender identity or expression" or "sex," among other categories. See N.Y. Exec. L. § 296(1)(a). The NYCHRL makes it unlawful "[f]or an employer or an employee or agent thereof, because of the actual or perceived . . . gender . . . of any person . . . [t]o discriminate against such person in compensation or in terms, conditions or privileges of employment." See N.Y.C. Admin. Code § 8-107(1)(a)(3). The 2019 amendment of the NYSHRL "has been interpreted to align prospective constructions of the NYSHRL's standards with the more lenient standards of the NYCHRL."

Allen v. City of New York, No. 24-2589, 2025 WL 3152723, at *3 n.2 (2d Cir. Nov. 12, 2025) (citing Wright v. White Plains Hosp. Med. Ctr., 232 N.Y.S.3d 594, 595-96 (2d Dep't 2025)). The Court therefore analyzes Plaintiff's NYSHRL and NYCHRL claims together. See Lane v. Salesforce, Inc., No. 25 Civ. 9707 (DEH) (HJR), 2026 WL 2364630, at *4 (S.D.N.Y. Aug. 14, 2026) (focusing its analysis on the NYCHRL claim because "the NYCHRL provides the 'most lenient' and 'expansive' liability standard for sexual harassment").

Despite the above-mentioned leniency of the NYCHRL, courts have some disagreement as to the breadth of conduct encompassed by the statute. Some decisions in this Circuit have defined sexual harassment under the NYCHRL narrowly, requiring it to involve "conduct or language [that is] romantic, sexual, or lewd." See Singh, 750 F. Supp. at 257. Others have held that "under the NYCHRL, conduct constituting sexual harassment is unwelcome verbal or physical behavior based on a person's gender, regardless of whether that behavior is lewd or sexual in nature." See Toomey, 2026 WL 458244, at *6. Many courts have looked to guidance published by the New York City Commission on Human Rights, the agency responsible for enforcing the NYCHRL, which defines sexual harassment as "unwelcome verbal or physical behavior based on a person's gender."[5] Stop Sexual Harassment Act, NYC Commission on Human Rights, https://home4.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (last visited Sep't 9, 2026). "New York law recognizes that sexual harassment is a subset of discrimination." Owens, 786 F. Supp. 3d at 844.

---

[5] The Commission explains such conduct "can include unwanted touching; offensive and suggestive gestures or comments; asking about a person's sex life or making sexualized remarks about a person's appearance; sexualizing the work environment with imagery or other items; or telling sexual jokes." Stop Sexual Harassment Act, NYC Commission on Human Rights, https://home4.nyc.gov/site/cchr/law/sexual-harassment-training-main.page (last visited Sep't 9, 2026).

Even with the broadest application of the NYCHRL—that sexual harassment is unwelcome verbal or physical behavior based on gender—Plaintiff's amended pleading does not meet this standard. In the Amended Complaint, Plaintiff alleges that she was subjected to "sexual harassment," explaining:

> Between June and December 2022, co-worker Joshi Amol made inappropriate remarks about Plaintiff's Teams profile photo, questioned whether it was really her, and stated he "would do anything" for her. These comments made Plaintiff uncomfortable and were ignored by management.
>
> Instead of taking corrective action on the issues Plaintiff reported concerning Inge Anderson, the manager failed to act, effectively dismissing the matter as a mere "cat fight" between women. By trivializing Plaintiff's concerns in this way, the manager not only failed to address the harassment but also failed to de-escalate the situation, thereby creating a fertile environment for further hostility. This response revealed a tendency toward gender-based bias, treating the complaint less seriously because the parties involved—or the reporting party—were women.

See ECF No. 28 ¶¶ 32-33. Plaintiff further alleges the "true reason" she was terminated "was retaliation for reporting harassment and discrimination." Id. ¶ 31. Plaintiff refers to "harassment" in vague and conclusory terms throughout her Amended Complaint. See id. ¶¶ 1-2, 24, 29, 31, 33, 39, 43, 48-49.

These allegations, assumed to be true at this stage of litigation,[6] fail to plead a viable nonfrivolous or plausible sexual harassment claim. Although Plaintiff alleges that a co-worker made remarks that made Plaintiff uncomfortable, the Amended Complaint is devoid of any facts tending to show that these remarks had anything to do with Plaintiff's gender. Plaintiff does not include any allegations of sexualized or lewd language, unwanted physical conduct, or unwelcome gender-based conduct. The lack of any facts concerning the nature, context or

[6] As noted above, on this motion to compel arbitration, the Court employs "a standard similar to that applicable for a motion for summary judgment," which requires "draw[ing] all reasonable inferences in favor of the non-moving party." See Barrows, 36 F.4th at 49 (internal quotations & citation omitted).

timing of the allegedly harassing remarks renders them insubstantial. The closest Plaintiff gets is her allegation that Mr. Amol said he "would do anything" for Plaintiff, see ECF No. 28 ¶ 32, which, without any other facts, cannot reasonably be interpreted as a sexual or romantic advance toward Plaintiff. The Amended Complaint does not allege the use of gendered terms or overt (or even implied) mention of Plaintiff's sex or gender. Notably, the allegations concerning Mr. Amol were included in the Amended Complaint filed on September 19, 2025, but not in the original Complaint filed approximately one year earlier. Compare ECF No. 1, with ECF No. 28. The Court draws from this timing that Plaintiff was aware of the possible applicability of the EFAA and put forth her best case to try to benefit from its arbitration exclusion provisions.

In sum, Plaintiff's allegations do not allege that she was subjected to sexual harassment based on her sex or gender. Plaintiff's allegations about Mr. Amol lack any context suggesting the comments were of a sexual or gender-based nature, as opposed to generalized incivility unrelated to sex or gender. See ECF No. 28 ¶¶ 32-33. Plaintiff's other allegations do not mention sex or gender at all. See id. ¶¶ 1-57. Plaintiff's inclusion of claims of sexual harassment without any facts to support these claims does not suffice to make out either a nonfrivolous or plausible sexual harassment claim. Accordingly, the Court finds that Plaintiff's allegations do not trigger the EFAA because Plaintiff fails to plead a nonfrivolous or plausible sexual harassment claim. Compare Lane, 2026 WL 2364630, at *7 (finding plaintiff failed to plead sexual harassment where plaintiff did not identify "unwelcome verbal or physical behavior based on [her] gender"); Kerim v. ABM Indus. Inc, No. 24 Civ. 5599 (MMG) (HJR), 2026 WL 2030769, at *5 (S.D.N.Y. July 13, 2026) (finding plaintiff failed to plead sexual harassment where plaintiff "[m]erely repeat[ed] the mantras 'harassment' and 'sexual harassment' without providing factual support); with Toomey, 2026 WL 458244, at *6 (finding plaintiff plausibly

pled sexual harassment because the complaint "describes numerous instances of unwanted physical and verbal conduct aimed at [plaintiff] based on her gender"); Brazzano v. Thompson Hine LLP, No. 24 Civ. 1420 (ALC) (KHP), 2025 WL 963114, at *7 (S.D.N.Y. Mar. 31, 2025) (finding plaintiff met the pleading standard where the alleged conduct was lewd, referred to a sexual act, and was made when plaintiff was alone in a male colleague's office). That Plaintiff makes allegations of certain disparate treatment unrelated to sexual harassment or assault, see, e.g., ECF No. 28 ¶¶ 20, 33, does not bring Plaintiff within the EFAA. See Waiguchu, 2026 WL 892069, at *10 (holding that "differential treatment motivated by a plaintiff's gender was not by itself 'sexual harassment' for purposes of the EFAA").

**B. Plaintiff And Defendant Agreed To Arbitration**

Having determined that the EFAA does not preclude arbitration, the Court now considers whether a valid arbitration agreement exists. The Court finds that Defendant has met its "initial burden of demonstrating that an agreement to arbitrate was made." Barrows, 36 F.4th at 50. In its motion papers, Defendant attaches as Exhibit E "the Agreement that Plaintiff electronically agreed to and accepted [on] May 12, 2022." See Allen Decl., ECF No. 33-1 ¶ 9; ECF No. 33-1 at 16-21. The Agreement, entitled "Employment, Confidential Information, Invention Assignment and Arbitration Agreement," identifies the Arbitration Provision in bold letters. See ECF No. 33-1 at 16, 18. The Arbitration Provision clearly states that Plaintiff agrees that "any dispute or controversy" that Plaintiff may have with Defendant arising out of her employment, including "any and all claims for violation of any federal, state or municipal statute, including, but not limited to, Title VII of the Civil Rights Act of 1964 . . . [and] the Fair Labor Standards Act" are subject to arbitration. See ECF No. 33-1 at 18-19. In an accompanying Declaration, Defendant's Senior Director of Human Resources explains how Plaintiff received her

employment offer via email on May 11, 2022. See Allen Decl., ECF No. 33-1 ¶ 6. Plaintiff was then required to log into Defendant's career website using her unique username and password and complete a series of tasks, including reviewing and accepting the Agreement. Id. ¶ 7. Plaintiff affirmatively clicked "Review," "I Agree," and "OK." Id. ¶ 8. Above "I Agree," in capitalized text, Plaintiff acknowledged that she had carefully read the Agreement, understood it completely, and agreed to be bound by its terms and conditions. See ECF No. 33-1 at 12. Plaintiff expressly acknowledged "that the foregoing Agreement contains a binding arbitration provision." Id. Plaintiff electronically submitted the Agreement on May 12, 2022. See Allen Decl., ECF No. 33-1 ¶ 9.

Defendant produced the Agreement and supporting documentation showing Plaintiff electronically agreed to it; thus, the burden shifts to Plaintiff to provide evidence that an agreement was not made. See Barrows, 36 F.4th at 50. "The threshold question of whether the parties indeed agreed to arbitrate is determined by state contract law principles." Nicosia v. Amazon.com, Inc., 834 F.3d 220, 229 (2d Cir. 2016). Plaintiff is a resident of Brooklyn, New York, and the Agreement provides that the Arbitration Provision "will be governed by the laws of the State in which [the employee's] work location is based." See id. at 20. Accordingly, the Agreement is governed by New York law. In New York, "[a] valid contract requires 'an offer, acceptance, consideration, mutual assent, and an intent to be bound.'" Rowe Plastic Surgery of N.J., L.L.C. v. Aetna Life Ins. Co., No. 23-8083, 2024 WL 4315128, at *2 (2d Cir. Sep't 27, 2024). The Agreement satisfies this standard. The record reflects that the Agreement was presented to Plaintiff, she acknowledged that she "carefully read" it, and affirmatively "signed" the document by selecting "I Agree" and "OK" to submit it. See generally Allen Decl., ECF No. 33-1 ¶¶ 6-9; ECF No. 33-1 at 12. "[A] party who signs or accepts a written contract is

conclusively presumed to know its contents and to assent to them." Gold, 365 F.3d at 149. The Court thus finds that the Agreement was offered and accepted with mutual assent and intent to be bound. Furthermore, there is adequate consideration for the Agreement, as both parties agreed to arbitrate all claims against one another and waived their right to bring claims in a court. See ECF No. 33-1 at 18-20. Mutual promises to arbitrate are sufficient consideration. See Abeona Therapeutics, Inc. v. EB Rsch. P'ship, Inc., No. 18 Civ. 10889 (DLC), 2019 WL 623864, at *4 (S.D.N.Y. Feb. 14, 2019) ("Under New York contract law, mutual promises to arbitrate constitute consideration sufficient to support an arbitration agreement.") (citing Kopple v. Stonebrook Fund Mgmt., LLC, 794 N.Y.S.2d 648, 648 (App. Div. 1st Dept. 2005).

Plaintiff's arguments that the Agreement is unenforceable are unpersuasive. Plaintiff primarily argues that the Agreement is procedurally and substantively unconscionable, and, therefore, it should not be enforced. See Pl.'s Opp'n, ECF No. 36-1 at 10-23. Specifically, Plaintiff contends that the Agreement is unconscionable because

> it is presented as a mandatory, non-negotiable condition of employment, overly broad in scope, and contains provisions that unfairly favor the employer while restricting the employee's rights, including a class action waiver, a confidentiality mandate, an impermissible delegation clause, and the agreement does not allow for all remedies available in court.

Id. at 13. Plaintiff continues that "[t]his agreement was presented on a take-it-or-leave-it basis during onboarding, without meaningful opportunity for negotiation or review, and contains numerous one-sided provisions favoring the employer." Id. at 16. Plaintiff's conclusory allegations are insufficient to establish unconscionability warranting invalidation of the Agreement. Generally, "a provision will be deemed unenforceable on unconscionability grounds only where it is 'both procedurally and substantively unconscionable when made.'" NML Cap. v. Republic of Argentina, 621 F.3d 230, 237 (2d Cir. 2010) (quoting Gillman v. Chase

Manhattan Bank, N.A., 534 N.E.2d 824 (1988)). The Second Circuit has held that the take-it-or-leave-it nature of an agreement "is not sufficient under New York law to render the [arbitration] provision procedurally unconscionable." Ragone v. Atl. Video at Manhattan Ctr., 595 F.3d 115, 122 (2d Cir. 2010) (alteration in original) (quotations omitted); Nayal v. HIP Network Servs. IPA, Inc., 620 F. Supp. 2d 566, 571 (S.D.N.Y. 2009) (holding that a contract offered on a "take-it-or-leave-it" basis was not procedurally unconscionable). Moreover, "mere inequality in bargaining power between employers and employees is not alone sufficient to hold arbitration agreements unenforceable." Gold, 365 F.3d at 150 (quotations & citation omitted). Unequal bargaining power coupled with "high-pressure and coercive tactics" may demonstrate procedural unconscionability. De Jesus v. Gregorys Coffee Mgmt., LLC, No. 20 Civ. 6305 (MKB) (TAM), 2021 WL 5591026, at *6 (E.D.N.Y. Nov. 29, 2021). Plaintiff fails to show that any of these conditions are met here. Plaintiff clicked "I Agree" after an "Acknowledgment" provision which stated, in capitalized text, "I acknowledge that I have carefully read the attached employment Agreement," and "I expressly acknowledge that the foregoing Agreement contains a binding arbitration provision." See ECF No. 33-1 at 12. Therefore, the Court finds that the Agreement is not procedurally unconscionable, and it is enforceable. See Ragone, 595 F.3d at 121-22 (requiring both procedural and substantive unconscionability to set aside arbitration agreement).

The Court also finds that the Agreement is not substantively unconscionable. First, the Arbitration Provision here is mutual, requiring both sides to arbitrate covered disputes and applying to claims each party may assert. See ECF No. 33-1 at 18-20. Plaintiff relies on a California case, Armendariz v. Found. Health Psychare Servs. Inc., 24 Cal. 4th 83 (2000), which it not binding in this District and involved a lack of mutual obligation to arbitrate. Second,

Plaintiff argues the breadth of the Arbitration Provision is overly broad, but she does not offer case law to support this argument or explain which of her claims should not fall within an over-broad agreement to arbitrate other than the EFAA arguments discussed above. See ECF No. 33-1 at 11, 15, 19-22.

Plaintiff's critique of the delegation clause also fails. The Agreement states the parties agree to arbitrate "all claims or issues regarding arbitrability, the validity, scope, enforceability, interpretation, or application of this agreement, [and] the arbitrator's jurisdiction." See ECF No. 33-1 at 19. Courts have consistently found this language "clearly and unmistakably delegates the gateway issues to the arbitrator," and that such clauses are valid. See Peng v. Uber Techs., Inc., 237 F. Supp. 3d 36, 53 (E.D.N.Y. 2017) (collecting cases). Plaintiff's attack on the confidentiality provision relies on a First Circuit case that concerned settlement agreements prohibiting employees from filing charges with or assisting the U.S. Equal Employment Opportunity Commission. See EEOC v. Astra U.S.A., Inc., 94 F.3d 738 (1st Cir. 1996). The instant Agreement contains standard confidentiality restrictions, while the Arbitration Provision preserves the right to bring issues to government agencies. See ECF No. 33-1 at 16, 19-20 ("Nothing in this Arbitration Agreement precludes me from lawfully bringing issues to the attention of federal, state, or local agencies"). Thus, the Agreement is deemed valid.

**C. Plaintiff's Claims Are Arbitrable**

The issue of arbitrability can "be referred to the arbitrator if there is clear and unmistakable evidence from the arbitration agreement . . . that the parties intended that the question of arbitrability shall be decided by the arbitrator." Bell v. Cendant Corp., 293 F.3d 563, 565-66 (2d Cir. 2002). Here, the Agreement explicitly states that the parties agree to submit to the arbitrator "all claims or issues regarding arbitrability, the validity, scope, enforceability,

interpretation, or application of this agreement." See ECF No. 33-1 at 19. This is "complete, clear, and unambiguous" evidence to delegate the issue of arbitrability to the arbitrator. Greenfield v. Philles Records, Inc., 98 N.Y.2d 562, 569 (2002). Nevertheless, for completeness of the instant review, the Court considers whether Plaintiff's claims are within the scope of the Agreement and finds that they are.

The Arbitration Provision states that, except as otherwise noted, "any dispute or controversy" that Plaintiff may have with Defendant arising out of her employment, including "any and all claims for violation of any federal, state or municipal statute, including, but not limited to, Title VII of the Civil Rights Act of 1964 … [and] the Fair Labor Standards Act" are subject to arbitration. See ECF No. 33-1 at 18-19. Plaintiff's claims—discrimination, retaliation, hostile work environment, and wage-and-hour claims—fall squarely within the claims covered by the Arbitration Provision and are therefore subject to arbitration. As discussed above, the EFAA does not preclude arbitration because Plaintiff has not non-frivolously or plausibly alleged sexual harassment. Plaintiff does not identify any other reason to not take "any and all disputes" for its full breadth. See American E Group LLC, 432 F. Supp. 3d at 399 ("The meaning of these provisions is clear. All disputes are subject to arbitration."). In addition, courts resolve doubts concerning the scope of an arbitration agreement "in favor of arbitration." DDK Hotels, LLC, 6 F.4th at 317. The Court thus finds Plaintiff's claims against Defendant are subject to arbitration.

The parties must commence arbitration proceedings within 60 days of this Order.

**D. The Court Stays This Action Pending Arbitration**

The Court's final inquiry is whether to stay Plaintiff's claims against Defendant. Defendant asks the Court to stay the instant proceedings until arbitration has been completed.

See Def.'s Mem., ECF No. 33 at 19-20. Given that all of Plaintiff's claims against Defendant are subject to arbitration, and that Defendant has requested a stay, the Court finds that a stay is warranted. See Spizzirri, 601 U.S. at 478 (holding that "staying rather than dismissing a suit comports with the supervisory role that the FAA envisions for the courts"). By staying this action, Plaintiff and Defendant can proceed directly to arbitration of Plaintiff's claims, without uncertainty as to the procedural status of the case. Given Plaintiff's pro se status, dismissing this action may impose additional burdens on Plaintiff in terms of navigating unfamiliar legal procedures. Thus, the Court stays Plaintiff's claims against Defendant until the issuance of the arbitral award.[7]

**IV. CONCLUSION**

For the reasons stated above, Defendant's motion to compel arbitration is granted. The parties must commence arbitration proceedings within 60 days of this Order. This case is stayed until the arbitral award is issued. Within ten days of receiving the arbitrator's award, Defendant must file a status letter informing the Court as to the arbitration's outcome.

The Court will mail a copy of this Order to Plaintiff at 319 Melrose Street, Apt. 4B, Brooklyn, New York 11237.

Dated: Brooklyn, New York
September 14, 2026

Vera M. Scanlon

VERA M. SCANLON
United States Magistrate Judge

[7] The Court is in receipt of Plaintiff's letter at ECF No. 40 regarding a briefing schedule. In light of this Order and the stay, Plaintiff's request for guidance is denied.